## The People v. Charles Quick.

*Indorsement of names of witnesses on information—Rebutting evidence—Prosecuting attorney.*

1. The names of all witnesses for the prosecution in a criminal case must be indorsed on the information before the trial or as soon as discovered after it begins; the respondent is entitled to a chance to canvass their character whether they are examined in the main case or on rebuttal.

2. The evidence on which the prosecution relies in a criminal case must all be put in, if possible, before the prosecution rests, though testimony that could not be had earlier may be admitted afterwards on cause shown. But none of that which properly belongs to the case

in chief can be reserved until after the defense rests, to be then introduced as rebutting evidence.

3. A public prosecutor has no right to urge to the jury that respondent's failure to discredit an adverse witness by the testimony of others, instead of relying alone on cross-examination, is significant against him, and that he could show the facts if they existed.

4. A prosecuting attorney must be entirely impartial as between accuser and accused, and must act only in furtherance of justice; and he cannot be permitted to assert to the jury 'under the solemnity of his official oath' his belief in the guilt of a respondent.

5. Evidence that tends to prove the commission of a crime or its immediate surroundings can hardly be treated as rebutting evidence.

Error to Oakland.  (Stickney, J.)   Oct. 22.—Oct. 28.

Information for larceny from the person.   Respondent brings error.   Reversed.

Attorney General *Moses Taggart* for the People.

*Thomas J. Davis* for respondent.

CAMPBELL, J.   Respondent was convicted of stealing a watch from the person of one David Wright.   The case was before us on conviction upon a former trial, which was set aside on a single ground, on the supposition that the prosecution would on a second trial avoid other errors which we did not think it necessary to dwell on.   51 Mich. 547.   A further trial was had, and the case comes up again upon several assignments of error, which are within well-settled rules of law.   We shall not take them all up in course, but point out such as may be grouped together.

We have held on several occasions that the defendant has a right to know in advance of the trial what witnesses are to be produced against him, so far as then known, and to have any new witnesses endorsed on the information as soon as discovered.   The object of this is not merely to advise a respondent what witnesses will be produced on the main charge.   It is to guard him against the production of persons who are unknown, and whose character he should have an opportunity to canvass.   It is as important to impeach a rebutting wit-

ness as any other. In the present case, however, the witnesses who were received as rebutting witnesses were not such. They were called to prove what belonged to the people's case in chief. Cases may sometimes arise where testimony which could not be had in the opening may be let in upon good cause shown thereafter. But it is not proper to divide up the testimony on which the people propose to rest their case, and nothing which tends to prove the commission of the crime itself or its immediate surroundings can be classed as rebutting evidence under ordinary circumstances, if at all. In this case that rule was repeatedly violated.

Complaint is also made with reason against the allowance, and apparently the approval, of various statements made by the prosecuting officer in his summing up. We are not at all disposed to reverse judgments for merely indiscreet ebullitions of counsel which may be allowed for, and are neutralized by the effect of the charge. But in the present case there were some things said to the jury which could hardly fail to do mischief. The case was one where the evident character of several of the persons brought forward would make it necessary for the jury to weigh their testimony with more than usual care. The prosecuting witness was an admitted criminal, whose cross-examination was in our opinion restricted more than it should have been. It was claimed that witnesses on both sides were open to criticism and suspicion, and it could not be avoided that in their conflict of testimony their respective claims to credit should be the chief contention. Any discussion on the facts themselves, if kept within proper limits of decorum, might be expected.

But here the prosecuting counsel was allowed in his closing, against objection, more than once to urge to the jury that a failure to prove by other witnesses discrediting facts on which a witness had been cross-examined was very significant, and that if such facts existed respondent could have shown them. The court no doubt intended to correct this in the charge. But it was repeated and pressed against objection during the argument, and the reference to it in the charge

was not such as to plainly correct it. A specific request for such an instruction was refused, and nothing was adequately done to prevent the jury from acting on a false impression.

A much more serious example of a similar mischief was presented by this passage of the address,—which was complained of on the spot and not rebuked, and which was again complained of in a specific request to charge, which was refused, and not rectified, in the charge given :

" I stand here to-day under the solemnity of my official oath, and say to you, as a man and a citizen, that I believe they not only lied, but I believe they committed willful and deliberate perjury. I do not believe that they were there that night, nor do I believe that that man, the defendant, ever in God's world took that watch from the sidewalk, but he stole it from the person of David Wright, and then hid it away within five minutes."

This language came from an officer whose sworn duty required him to act only in furtherance of justice, and who is bound by statutory requirements to stand entirely impartial between the complainant and the prisoner. When such an officer gives the jury to understand that what he says is under the sanction of his official oath, and the court, when applied to, declines to correct that statement, it cannot be supposed that jurors may not give credence to it and govern their decision more or less by it. The impropriety of expressing a personal opinion to the jury upon disputed facts has always been regarded as great, and has in some notable instances led to unpleasant strictures on the character of celebrated counsel. Whatever allowance may be made for professional enthusiasm, a deliberate and solemn averment of counsel's opinion should never be allowed to influence the jury, and when given as here, as an opinion under oath, it should have been at once shut out and its influence guarded against by proper instructions as requested.

For these reasons the judgment must be reversed.

The other Justices concurred.