PEOPLE v McCAIN

Docket No. 77-1423. Submitted April 4, 1978, at Grand Rapids.—
    Decided June 19, 1978. Leave to appeal applied for.
        William S. McCain was convicted of criminal sexual conduct in
    the first degree, Berrien Circuit Court, William S. White, J.
    Defendant appeals, alleging that in closing arguments the
    prosecutor improperly addressed certain facts which had not
    been introduced into evidence at trial. *Held:*
        The prosecutor in his closing argument and again in rebuttal
    impermissibly discussed the circumstances of a telephone con-
    versation about which there had been no evidence introduced
    at trial. This constituted reversible error, despite the lack of
    objection at trial by the defendant, because the prosecutor's
    arguments so tainted the jury deliberations that the Court of
    Appeals cannot say that the defendant was given a just and
    fair trial.
        Reversed and remanded.
        J. H. GILLIS, J., dissented. He would hold that the error did
    not so prejudice the jury that they could not render a fair and
    impartial verdict and that had the defendant entered a timely
    objection a curative instruction could have cured any prejudice.
    He would affirm.

OPINION OF THE COURT

1. JURY—DELIBERATIONS—EVIDENCE—FACTS NOT IN RECORD.
    Deliberations of a jury are to be confined to the evidence pre-
        sented; an attorney may not argue or refer to facts not of the
        record which are within that attorney's personal knowledge.

2. APPEAL AND ERROR—CRIMINAL LAW—PROSECUTOR'S REMARKS—
        PRESERVING ISSUE—MISCARRIAGE OF JUSTICE.
    The Court of Appeals will reverse on the basis of alleged impro-
        priety of remarks by a prosecutor which háve not been objected

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial § 1015.
[2] 75 Am Jur 2d, Trial § 192 *et seq.*
[3] 75 Am Jur 2d, Trial §§ 211, 218 *et seq.*
[4] 5 Am Jur 2d, Appeal and Error §§ 545, 548, 549.

to only where a review of the record convinces the Court that the remarks resulted in a miscarriage of justice to the particular defendant.

3. CRIMINAL LAW—PROSECUTOR'S IMPROPER ARGUMENT—FIRST-DEGREE CRIMINAL SEXUAL CONDUCT—EVIDENCE—CREDIBILITY—APPEAL AND ERROR.

A prosecutor's reference in his closing argument and again on rebuttal to a telephone call made by a defendant, while the prosecutor was discussing the relative credibilities of a complaining witness and the defendant in a first-degree criminal sexual conduct case, was reversible error where no evidence had been introduced at trial relative to the telephone call because any improper factor can significantly tip the scales used by the jury to weigh the testimony where the issue of identification hinges on the relative credibilities of witness testimony.

DISSENT BY J. H. GILLIS, J.

4. APPEAL AND ERROR—PRESERVING ISSUE—MANIFEST INJUSTICE.

*The Court of Appeals will not entertain issues raised for the first time on appeal absent a record that affirmatively shows that a manifest injustice has occurred; counsel cannot sit back and harbor error to be used as an appellate parachute in the event of jury failure.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John Smietanka,* Prosecuting Attorney, and *Chris W. Dunfield,* Assistant Prosecuting Attorney, for the people.

*Jack M. Sturwin,* for defendant on appeal.

Before: R. B. BURNS, P. J., and J. H. GILLIS and D. C. RILEY, JJ.

D. C. RILEY, J. Defendant William Sherman McCain was charged with criminal sexual conduct in the first degree, contrary to MCL 750.520b(1)(e); MSA 28.788(2)(1)(e), and convicted of that offense at a jury trial. He raises several issues on appeal, one of which mandates reversal of his conviction.

At defendant's preliminary examination, the complainant testified that on the night in question she was asked by Linda Wright, a neighbor, to babysit for Ms. Wright's two children. While at the Wright house, she received a telephone call from Linda Wright to the effect that a man was going to stop over and that she, the complainant, should allow him to enter the house. Shortly thereafter, defendant arrived and was admitted by the complainant. They watched television and conversed for awhile without any hint of the impending assault.

Complainant testified that as she was cleaning up, defendant grabbed her, placed an object which he described as a knife to her neck, and threatened to kill her if she cried out. While they struggled, the telephone rang and defendant answered, holding his hand over complainant's mouth. Complainant stated that defendant said something on the telephone about "being there in a little while".

Following this telephone call, defendant allegedly forced complainant to submit to an act of sexual intercourse. Before leaving the house, according to complainant, defendant made a telephone call, the substance of which complainant did not relate.

After defendant left, complainant contacted the police and eventually accompanied them to the bar where Linda Wright was working. At the bar complainant identified defendant to the police and he was arrested.

Defendant was tried in October, 1976, but a mistrial was declared when the jury concluded, after a period of deliberation, that they were deadlocked on reaching a verdict. A second trial was then commenced on December 7, 1976.

In his opening argument, the prosecutor outlined the evidence which he intended to introduce. His recitation of complainant's anticipated testimony corresponded with her earlier preliminary examination testimony. However, complainant's actual testimony presented at the second trial never mentioned the alleged telephone call defendant made from the house subsequent to the charged act of sexual assault.[1]

Defendant testified in his own behalf. He admitted going to Ms. Wright's house on the night in question. He also admitted receiving a telephone call from Ms. Wright while at the house and telling her that he would be right down to the bar where Ms. Wright was working. From this point his testimony diverges from that of the complainant. He stated that when he arrived at the house complainant was there with two young men. He claimed to have stayed at the house for only a short time in order to check on Ms. Wright's children. He denied ever having touched or sexually attacked complainant. According to defendant, he left the house and proceeded to a bar, where he called Ms. Wright at her place of employment to tell her that he was coming to see her. He stated that he was at the bar where Ms. Wright worked with friends for about an hour before the police arrived with complainant and he was arrested.

Linda Wright testified for the defense and corroborated defendant's story. She admitted calling complainant to tell her that defendant was coming to the house and calling later to talk to defendant. She stated that defendant called her at the bar to tell her that he was coming there. She testified

---

[1] The prosecution's brief on appeal concedes the absence of any testimony from complainant regarding the third telephone call.

that defendant was at her place of employment for over an hour before he was arrested.

During his closing argument, the prosecutor discussed at length the relative credibilities of complainant's testimony versus that of defendant. He emphasized the circumstances of the telephone call from defendant to Ms. Wright:

"There was one other significant detail, the significance of which we will explore later in this argument. That is that Linda or Karen says, that after they had this intercourse, and while they were having this other discussion, the defendant made a phone call.

"She does not know to whom he made the phone call, but he indicated to somebody—she related the conversation, that he would be along in a few minutes or moments, or words to that effect.

"The defendant tells you that he made such a phone call. Linda Wright told you that she received such a phone call.

\* \* \*

"At midnight he made three phone calls. The most interesting of the three is the phone call that he said he made to Linda Wright.

"He says, he called Linda Wright to tell her that he would be over there in a few minutes.

"Linda Wright says that at five after twelve she received a phone call, telling her that he would be over there in a few minutes and, in fact, he was over in a few minutes.

"The interesting fact of that phone call, ladies and gentlemen, that interesting facts that have been testified to by the defendant and the—and he and his witnesses [sic], Linda Wright, is that that must be the phone call, if not heard around the world, at least heard around Watervliet. Because Karen Tuttle heard the exact phone call at about the same time, as near as we can tell, from Linda Wright's own home.

"She knows the phone call was made, from her testimony. As we can piece the time together, as she knows what the conversation was about, and the testi-

mony to it in practically the same words as the defendant and Linda Wright testified to.

"Ladies and gentlemen, I would ask you, how would Karen Tuttle have known about that phone call taking place at that time, and on that subject matter, had it not been made at Linda Wright's house? There is no way.

"Ladies and gentlemen of the jury, unless the defendant was right there at Linda Wright's house, unless the phone call was made, as the defendant says and Karen Tuttle says, at that house and at that time, after the act of sexual intercourse had taken place."

Defense counsel in his closing argument made no mention of the fact that the complainant had not in fact testified as to the third telephone call. The prosecutor referred to the phone call in rebuttal argument in similar language as was previously quoted.

The error of the prosecutor in arguing the effect of testimony that was not presented at the trial has been conceded by the prosecution in this appeal. It is an elementary rule of law that the jury's deliberations are confined to the evidence presented. An attorney may not argue or refer to facts not of the record which are within that attorney's personal knowledge. *People v Quick,* 58 Mich 321; 25 NW 302 (1885), *People v Dane,* 59 Mich 550; 26 NW 781 (1886), *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969), *People v McGee,* 66 Mich App 164; 238 NW2d 564 (1975).

Our only issue to decide is whether the prosecutor's remarks, given the fact that defense counsel did not object, constitute reversible error. We will only reverse on the basis of unobjected-to remarks where our review convinces us that the remarks resulted in a miscarriage of justice to the particular defendant. *People v Auer,* 393 Mich 667; 227 NW2d 528 (1975), *People v McGee, supra,* MCL

769.26; MSA 28.1096. On the record before us, we find that the prosecutor's argument so tainted the jury deliberations that we cannot say that defendant was given a just and fair trial.

This case essentially came down to a credibility battle between the complainant and defendant. While there was physical evidence tending to show that complainant had been sexually assaulted, the only direct evidence tying defendant to the crime was the testimony of the complainant. Where the issue of identification hinges on the relative credibilities of witness testimony, any improper factor can significantly tip the scales used by the jury to weigh the testimony. See *People v Abdo,* 81 Mich App 635; 265 NW2d 779 (1978).

In the case at bar, the prosecutor's final argument concerning the third telephone call may have had a powerful impact on the jury. It is not inconceivable that one or more jurors finally resolved the conflicting testimony by answering the prosecutor's question of how the complainant could have known of the third call unless it was actually made in her presence. The mere consideration of the question improperly prejudiced the deliberations.

The conviction is reversed and remanded.

R. B. BURNS, P. J., concurred.

J. H. GILLIS, J. *(dissenting).* I respectfully dissent.

As noted by the majority, this Court will not entertain issues raised for the first time on appeal absent a record that affirmatively shows that a manifest injustice has occurred.

"Counsel cannot sit back and harbor error to be used as an appellate parachute in the event of jury failure."

*People v Brocato,* 17 Mich App 277; 169 NW2d 483
(1969).

Defense counsel made no objections to the prose-
cutor's closing argument in the instant case. With-
out a doubt, the prosecutor erred by incorporating
into his closing argument testimony from the pre-
liminary examination which was not produced at
trial. However, this error did not so prejudice the
jury that they could not render a fair and impar-
tial verdict in this case.

The testimony in question was not a crucial link
in the chain of evidence produced against defend-
ant at trial. The victim had previously testified on
the matter at the preliminary examination. The
prosecutor clearly intended to elicit the testimony
at trial as can be seen by his opening statement
that made reference to it.

The other evidence adduced at trial was more
than sufficient to convict defendant of the crime
charged herein.

A cautionary instruction by the trial judge
would have cured any prejudice created by the
prosecutor's closing arguments.[1]

The remaining issues have been examined and
this writer does not believe they warrant discus-
sion nor do they constitute reversible error.

Under such circumstances, I would affirm de-
fendant's conviction.

---

[1] *See People v Blassingame,* 59 Mich App 327, 335; 229 NW2d 438
(1975), *People v Corsa,* 50 Mich App 479, 485; 213 NW2d 579 (1973).