PEOPLE v KNOLTON

Docket No. 77-1103. Submitted June 21, 1978, at Detroit.—Decided
October 17, 1978. Leave to appeal denied, 406 Mich —.

Moses Knolton was convicted of assault with intent to do great
bodily harm less than murder, Recorder's Court of Detroit,
Joseph A. Gillis, J. Defendant appeals. *Held:*

The prosecutor in his opening and closing arguments argued
facts not supported by trial evidence. A prosecutor may not
argue or refer to facts not of record. Despite defendant's
failure to object, a new trial should be granted on the basis of a
miscarriage of justice where the prosecutor's remarks, in addi-
tion to being outside of the record, were misleading, of ques-
tionable accuracy and could have significantly diverted the
jury's attention from the actual issues of the case.

Reversed and remanded.

M. F. CAVANAGH, J., dissents. He would hold defendant's
conviction should be affirmed on the ground that any error
resulting from the prosecutor's remarks, when considered with
the court's instructions concerning arguments of counsel, cre-
ated no manifest injustice.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 4 Am Jur 2d, Appeal and Error § 541.
    5 Am Jur 2d, Appeal and Error § 896.
    58 Am Jur 2d, New Trial § 71.
    63 Am Jur 2d, Prosecuting Attorneys § 27.
    75 Am Jur 2d, Trial §§ 257-259.
[2] 4 Am Jur 2d, Appeal and Error § 541.
    5 Am Jur 2d, Appeal and Error § 896.
    58 Am Jur 2d, New Trial §§ 16, 71.
    63 Am Jur 2d, Prosecuting Attorneys § 27.
    75 Am Jur 2d, Trial §§ 257-259, 315-318.
[4] 29 Am Jur 2d, Evidence §§ 493-507
[5] 5 Am Jur 2d, Appeal and Error § 896.
    58 Am Jur 2d, New Trial § 16.
    75 Am Jur 2d, Trial §§ 315-318.

OPINION OF THE COURT

1. CRIMINAL LAW—PROSECUTOR—EVIDENCE—PROSECUTOR'S IMPROPER ARGUMENT—FACTS NOT IN RECORD.

   A prosecutor's argument to a jury must be supported by the evidence presented; he may not argue or refer to facts not of record.

2. CRIMINAL LAW—COMMENTS OF PROSECUTOR—FAILURE TO OBJECT— FAIR TRIAL—MISCARRIAGE OF JUSTICE.

   A prosecutor's unobjected-to trial comments may be cause for reversal where the result of those comments is a denial of the defendant's right to a fair trial; a miscarriage of justice occurs where the prosecutor's unobjected-to comments were of questionable accuracy and where they could have significantly diverted the jury's attention from the actual issues of the case.

3. CRIMINAL LAW—COMMENTS OF PROSECUTOR—JURY—PREJUDICE— NEW TRIAL.

   A defendant should be granted a new trial where, as a result of a prosecutor's trial comments, the jury was not only prejudiced by considerations outside of the evidence presented in the case but also was misled as to the evidentiary value of those considerations.

4. EVIDENCE—HEARSAY STATEMENTS—ADMISSIBILITY.

   Statements of individuals made to police officers, which prompted their investigation of a defendant's activities, are admissible over defendant's objections that they were hearsay where the statements were not presented to show their truth but only to show their effect on the officers' course of conduct.

DISSENT BY M. F. CAVANAGH, J.

5. CRIMINAL LAW—PROSECUTOR'S REMARKS—INSTRUCTIONS TO JURY— MANIFEST INJUSTICE—APPEAL AND ERROR.

   *A defendant's conviction should stand where any error resulting from a prosecutor's remarks, when considered with the court's instructions concerning the arguments of counsel, created no manifest injustice.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *H. Gail McKnight,* Assistant Prosecuting Attorney, for the people.

*Gerald S. Surowiec,* for defendant on appeal.

Before: D. C. RILEY, P.J., and M. F. CAVANAGH and B. M. HENSICK,* JJ.

D. C. RILEY, P.J. Defendant Moses Knolton was convicted at a jury trial of assault with intent to do great bodily harm less than murder, contrary to MCL 750.84; MSA 28.279, and sentenced to a prison term of two to ten years.

The incident in question occurred when a crew of plain clothes Detroit police officers, driving an unmarked police car, responded to the requests of several people, including relatives of defendant, to investigate a disturbance at defendant's house. According to the officers, they spoke to defendant on his front porch, but took no immediate action. While they were then observing the house, defendant drove away at a high rate of speed. After a chase through the city streets, the cars stopped at a red light. One officer stated that as he approached defendant's vehicle, with his gun drawn, and identified himself as a police officer, he was shot in the chest by defendant.

Defendant Knolton testified in his own behalf. He admitted having been in an argument at his house, but denied having spoken to any police officers on his porch. He stated that he did not notice anyone following him when he drove away from his house, but that a man approached his car with a gun drawn when he was stopped at the light. Defendant denied that the man identified himself as a police officer, instead maintaining that he thought the man was one of several young men who allegedly had been harassing him earlier in the day. He stated that he did fire shots in the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

man's direction but only after he had first been
fired upon.

Obviously one key area of dispute in regard to
defendant's claim of self-defense was whether de-
fendant in fact knew that the man approaching
his car was a police officer. In this context, the
identifiability of the unmarked police car was
quite relevant. In opening argument, the prosecu-
tor stated:

"Of course, the unmarked car is a Plymouth four
door sedan with no radio antenna, and anybody with
brains and eyes know[s] that's a police car specially in
the city of Detroit."

During closing argument, the prosecutor again
spoke to the issue of the appearance of the un-
marked car:

"And that will become important because the car was
unmarked, and they were in civilian clothes.

"My friend Mr. Parzen [defense counsel] will probably
say [']how would he know they were police officers[?'].

"Ladies and gentlemen, all you have to do is walk out
of this building and take a look at that parking lot
across the street, and there you see a whole Pythian of
unmarked Detroit police cars, all being Plymouths, all
being four door, all having blackwalls, all having no
radio antenna.

"So the only thing it doesn't have is a big P-O-L-I-C-E
printed on the side of the car."

Defendant asserts on appeal that the comments
made in the prosecutor's argument were improper
because they relied upon evidence not on the
record. We see merit in this contention. The only
testimony at trial related to these comments were
the police officers' descriptions of the car. There
was no real evidence of the general public's ability

to recognize such a car as an unmarked police vehicle and, more importantly, defendant testified that he never saw the car, either at his house or during the subsequent chase.

It is a long-standing rule of law that an attorney may not argue or refer to facts not of the record. *People v McCain,* 84 Mich App 210; 269 NW2d 528 (1978), *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969), *People v Dane,* 59 Mich 550; 26 NW 781 (1886), *People v Quick,* 58 Mich 321; 25 NW 302 (1885). In the case at bar, there was no record evidence to support the prosecutor's argument that defendant knew that the unmarked car was a police vehicle.

It is true, as raised by the prosecution here, that defendant did not object to these comments at trial. However, even unobjected-to comments may be cause for reversal where the result of those comments is a denial of the defendant's right to a fair trial. *People v McCain, supra, People v Auer,* 393 Mich 667; 227 NW2d 528 (1975). We find a miscarriage of justice in the present case since the comments could have significantly diverted the jury's attention from the actual issues of the case. We also note that the comments themselves, while phrased in a form that resembles judicial notice of a recognized fact, were of questionable accuracy.[1] Thus, the jury was not only prejudiced by considerations outside of the evidence presented in the case but also misled as to the evidentiary value of the considerations. Defendant should be granted a new trial absent this prejudicial argument.

---

[1] We would assume that one of the basic reasons for the use of unmarked police cars is to avoid citizen recognition, for purposes of surveillance and undercover work. While it is undoubtably true that some members of the populace have learned to identify the unmarked cars, we seriously doubt whether there exists the universal recognition perceived by the prosecutor in this case.

In order to avoid a recurrence should a retrial be commenced, we will briefly comment on a few other points raised in this appeal. Certain statements made to the police officers, which prompted their investigation of defendant's activities, were admitted over defendant's hearsay objections. We find that the objections were properly overruled, since the statements were not presented to show their truth but only to show their effect on the officers' course of conduct. MRE 801(c), *People v Garcia,* 31 Mich App 447; 187 NW2d 711 (1971). However, on retrial, the court should limit this testimony solely to the fact that several statements were made that induced the investigation, without reference to the irrelevant and prejudicial substance of those statements. Also, the status and availability of witness Betty Watts should be decided outside of the presence of the jury.

Reversed and remanded.

B. M. HENSICK, J., concurred.

M. F. CAVANAGH, J. *(dissenting).* I would affirm defendant's conviction. There was testimony that at least two individuals recognized and hailed the police vehicle. While this may not justify the prosecution's assertion that identifiability of these vehicles was "common knowledge", it does create at least an inference that some people recognized them. In any event, I am persuaded that any error in these remarks, especially when considered with the court's instructions concerning the arguments of counsel, created no manifest injustice. *People v Auer,* 393 Mich 667, 675; 227 NW2d 528 (1975).